**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CARLOS WIDEMAN,                  )
                                 )
                Plaintiff,       )
                                 )
      v.                         )          1:20CV933
                                 )
KILOLO KIJAKAZI,                 )
Acting Commissioner of Social    )
Security,                        )
                                 )
                Defendant.[1]    )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Carlos Wideman, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff applied for DIB (Tr. 244-45) and SSI (Tr. 246-52), alleging a disability onset date of August 15, 2010 (see Tr. 244, 246).[2]  Following denial of those applications initially (Tr. 87-117, 155-72) and on reconsideration (Tr. 118-52, 175-93), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 194-95).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 31-59), at the outset of which Plaintiff moved to amend his alleged onset date to June 30, 2015, his date last insured for DIB (see Tr. 35).  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 12-25.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 241-43), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings:

1.    [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2015.

2.    [Plaintiff] has not engaged in substantial gainful activity since October 18, 2013, the alleged onset date.

---

[2] Plaintiff previously applied for DIB and SSI in 2011, alleging disability since August 9, 2010.  (See Tr. 73.)  After denials at the initial and reconsideration levels (see id.), an ALJ issued an unfavorable decision on October 17, 2013 (see Tr. 70-81), which finalized after the Appeals Council denied Plaintiff's request for review on January 29, 2015 (see Tr. 88).  This Court affirmed the Commissioner's decision denying benefits.  Wideman v. Colvin, No. 1:15CV273, 2016 WL 6090866 (M.D.N.C. Oct. 18, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Jan. 4, 2017) (Osteen, Jr., C.J.).

3.    [Plaintiff] has the following severe impairments:
      impairment of the feet, history of bilateral
      reconstructive surgery, osteoarthritis, and impairments
      of bilateral wrists and hands.

      . . .

4.    [Plaintiff] does not have an impairment or combination of
      impairments that meets or medically equals the severity
      of one of the listed impairments in 20 CFR Part 404,
      Subpart P, Appendix 1.

      . . .

5.    . . . [Plaintiff] has the residual functional capacity to
      perform sedentary work (lift and carry 10 pounds
      occasionally and stand and/or walk 2 hours . . .[)],
      except he is limited to frequent pushing and pulling
      using the lower extremities, frequent handling and
      fingering using bilateral upper extremities, occasional
      climbing of stairs and ladders, and frequent balancing.

      . . .

6.    [Plaintiff] is unable to perform any past relevant work.

      . . .

10.   Considering [Plaintiff]'s age, education, work
      experience, and residual functional capacity, there are
      jobs that exist in significant numbers on the national
      economy that [he] can perform.

      . . .

11.   [Plaintiff has not been] under a disability, as defined
      in the . . . Act, from August 15, 2010, through the date
      of this decision.

(Tr. 17-25 (bold font and internal parenthetical citations
omitted).)[3]

_____

[3] Although Plaintiff moved to amend his onset date for the DIB claim from
August 15, 2010, to June 30, 2015, his date last insured for DIB, and the ALJ
appeared to grant that motion (see Tr. 35), the ALJ's decision expresses the
relevant period as beginning either on October 18, 2013, the day after an ALJ's

3

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

---

decision denying Plaintiff's prior application for DIB and SSI (see Tr. 15, 17), or on August 15, 2010, Plaintiff's original alleged onset date (see Tr. 25). The ALJ's error in that regard remains harmless, as a finding that Plaintiff did not qualify as disabled from either August 15, 2010, or October 18, 2013, through September 3, 2019, the date of the ALJ's decision, necessarily encompasses a finding that Plaintiff failed to so qualify from June 30, 2015, to September 3, 2019.

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

F.3d 473, 475 n.2 (4th Cir. 1999).[5]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]."  Id. at 179.[6]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the

_____

[5] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[7]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred in his evaluation of Listing 1.02A" (Docket Entry 15 at 4 (bold font omitted)); and

2) "[t]he ALJ erred by failing to perform a function-by-function evaluation of Plaintiff's contested and relevant abilities to stand, walk and rely upon a cane" (<u>id.</u> at 8 (bold font and single-spacing omitted)).

---

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (See Docket Entry 17 at 10-19.)

### 1. Listing 1.02A

Plaintiff asserts in his first assignment of error that "[t]he ALJ erred in his evaluation of Listing 1.02A [('[m]ajor dysfunction of a joint(s) (due to any cause)')]."  (Docket Entry 15 at 4.)  In particular, Plaintiff faults the ALJ for stating, as support for his determination that Plaintiff had not shown an inability to ambulate effectively as required by Listing 1.02A, that, "'[w]hile he use[d] assistive aids at times, he testified he [wa]s able to walk 15 yards and he use[d] a cane to ambulate.'" (Id. at 5 (quoting Tr. 18).)  According to Plaintiff, "it appears that the ALJ did not realize that the inability to ambulate effectively criterion of [ L]isting [1.02A] is met if the individual cannot walk a block at one time," and that Plaintiff "need not rely on a walker or two canes to ambulate in order to meet [ L]isting [1.02A] if he cannot walk a block."  (Id.)  Plaintiff deems the ALJ's error in that regard "particularly harmful given that all the other criteria of Listing 1.02A are present in this case."  (Id.; see also id. at 5-8 (describing evidence Plaintiff believes satisfies criteria of Listing 1.02A (citing Tr. 37-38, 324-25, 327, 346, 356, 362-64, 408, 410-11, 502, 508, 523, 555)).)  For the reasons that follow, Plaintiff's arguments fall short.

"Under Step 3, the [SSA's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii) (internal bracketed numbers omitted)). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (citing Zebley, 493 U.S. at 530, and 20 C.F.R. 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify.").

To satisfy the criteria of Listing 1.02A, Plaintiff must show "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion . . ., and findings on appropriate medically acceptable

10

imaging of joint space narrowing, bony destruction, or ankylosis"
involving "one major peripheral weight-bearing joint (i.e., hip,
knee, or ankle), [and] resulting in inability to ambulate
effectively, as defined in [§] 1.00B2b." 20 C.F.R. Pt. 404, Subpt.
P, App'x 1, § 1.02A.   In turn, the regulations define
"[i]neffective ambulation" as "an <u>extreme</u> limitation of the ability
to walk" and as "having insufficient lower extremity functioning to
permit independent ambulation without the use of a hand-held
assistive device that limits the functioning of <u>both</u> upper
extremities," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b1
(emphasis added), i.e., "a walker, two crutches or two canes," <u>id.</u>,
§ 1.00B2b2.  Other "[e]xamples of ineffective ambulation include,
but are not limited to, . . . the <u>inability to walk a block at a</u>
<u>reasonable place on rough or uneven surfaces</u>, the inability to use
standard public transportation, the inability to carry out routine
ambulatory activities, such as shopping and banking, and the
inability to climb a few steps at a reasonable pace with the use of
a single hand rail." <u>Id.</u> (emphasis added).

The ALJ provided the following analysis to support his finding
that Plaintiff's foot and ankle impairments did not meet or equal
the criteria of Listing 1.02A:

> The [ALJ] considered listing 1.02A, but [Plaintiff] does
> not meet the listing for major dysfunction of a joint
> involving a major peripheral weight bearing joint because
> there is insufficient evidence that [Plaintiff] is unable
> to ambulate effectively.  While he uses assistive aids at
> times, <u>he testified he is able to walk 15 yards and he</u>

11

> uses a cane to ambulate. . . . In this case, [Plaintiff]
> had surgery as a child and he is now an adult, and he is
> able to walk with a cane.

(Tr. 18 (emphasis added).)  According to Plaintiff, the ALJ's remark that Plaintiff "testified he is able to walk 15 yards and he uses a cane to ambulate" (id.) constitutes an "admi[ssion] that [Plaintiff] was limited to 15 yards of walking at one time" which would "satisf[y] the inability to ambulate effectively criterion of [L]isting [1.02A]."  (Docket Entry 15 at 5.)  For the reasons described more fully below, that argument misses the mark.

Standing alone, the ALJ's statement that, "[w]hile [Plaintiff] uses assistive aids at times, he testified he is able to walk 15 yards and he uses a cane to ambulate" (Tr. 18) could suggest that the ALJ fully credited that testimony.  Plaintiff's argument, however, glosses over the ALJ's later statement in his step three analysis that Plaintiff "is able to walk with a cane" without any further qualification regarding the terrain, the distance, or the time spent walking.  (Id.)  In addition, the ALJ expressly acknowledged Plaintiff's testimony "that he could walk 15 yards at most" (Tr. 19; see also Tr. 44), but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms not entirely consistent with the medical evidence and other evidence in the record" (Tr. 19), a finding which Plaintiff did not challenge (see Docket Entry 15).

Moreover, the ALJ's discussion of the medical evidence provides further support for his finding that Plaintiff had not shown an inability to ambulate effectively. The ALJ noted that, following the prior ALJ's decision in 2013, Plaintiff "continued to receive conservative medical treatment at Novant Health through primary care for . . . bilateral congenital clubbed feet." (Tr. 19 (emphasis added).) After discussing the sporadic medical treatment in the record (see Tr. 19-20), the ALJ remarked that, "[o]verall, with respect to [Plaintiff]'s bilateral lower extremities, there d[id] not appear to be any change or worsening in his condition since the prior [ALJ] decision" (id. (emphasis added)).

The ALJ's evaluation of the opinion evidence additionally supports the ALJ's finding with respect to Listing 1.02A. In that regard, the ALJ noted that "[t]he prior [ALJ] decision from October 2013 found that [Plaintiff] could . . . stand/walk 2 hours total in an 8-hour workday" (Tr. 19 (emphasis added)), and later explained that he found the prior ALJ's decision "somewhat persuasive" with respect to [Plaintiff]'s bilateral lower extremities as the record d[id] not show worsening there" (Tr. 23 (emphasis added)), but reduced the lifting/carrying requirement to a maximum of ten pounds and added restrictions on handling and fingering (see Tr. 18) to account for Plaintiff's later-developed upper extremity impairments (see Tr. 22, 23). Similarly, the ALJ deemed the reconsideration-level state agency medical consultant's opinion that Plaintiff

13

could stand and/or walk for a total of two hours in an eight-hour workday "somewhat persuasive" (Tr. 23; see also Tr. 128-31, 145-46), but noted that "the new evidence with respect to [Plaintiff's] bilateral wrists and possible carpal tunnel syndrome" necessitated "further limitations" (Tr. 23). In light of that new evidence, the ALJ reduced Plaintiff's RFC to maximum lifting and carrying of ten pounds and added a restriction to frequent handling and fingering with the bilateral upper extremities, but did not reduce the total amount of walking Plaintiff could perform. (Compare Tr. 18, with Tr. 128-31, 145-46.) The ALJ's above-described analyses make clear that the ALJ found Plaintiff capable of walking up to two hours in an eight-hour day, which coheres with his finding that Plaintiff had not demonstrated an inability to ambulate effectively under Listing 1.02A.

Lastly, Plaintiff's cited evidence would not have compelled the ALJ to find that Plaintiff lacked the ability to ambulate effectively and therefore that he met Listing 1.02A. (See Docket Entry 15 at 5-8 (describing evidence Plaintiff believes satisfies the criteria of Listing 1.02A (citing Tr. 37-38, 324-25, 327, 346, 356, 362-64, 408, 410-11, 502, 508, 523, 555)).) Some of that evidence consists of Plaintiff's testimony and subjective reports to treatment providers of lower extremity pain and/or swelling (see Tr. 37-38, 346, 363-64) which, as discussed above, the ALJ found not entirely consistent with the record (see Tr. 19), a finding

14

unchallenged by Plaintiff (<u>see</u> Docket Entry 15). Moreover, despite Plaintiff's subjective complaints of pain and/or swelling, physical examinations in those instances documented either <u>no</u> lower extremity findings at all (<u>see</u> Tr. 363), <u>normal</u> motor and sensory findings (<u>see</u> Tr. 347), or <u>no edema</u> (<u>see</u> Tr. 364).

Still other evidence consists of a diagnosis list reflecting that Plaintiff had "acquired claw toes" (Tr. 327) and x-rays documenting Plaintiff's foot and ankle impairments (<u>see</u> Tr. 407-08, 410-11, 508), which harmonize with the ALJ's step-two finding that Plaintiff had severe "impairment of the feet, history of bilateral reconstructive surgery, [and] osteoarthritis" (Tr. 17), but do not address the impact those impairments would have on Plaintiff's ability to <u>walk</u> (<u>see</u> Tr. 327, 407-08, 410-11, 508). Plaintiff additionally relies on two visits to podiatrist Dr. Cullan Reilly, wherein Dr. Reilly noted complete collapse of Plaintiff's midfoot and pain on range of motion (<u>see</u> Tr. 523), as well as decreased range of motion, flat feet, bone spurs, and tenderness to palpation (<u>see</u> Tr. 555); however, at both examinations, Dr. Reilly noted that Plaintiff remained "ambulatory" and displayed <u>no edema</u> (Tr. 523, 555).

Plaintiff also points to a consultative medical examination performed by Dr. Larry M. Gish on May 17, 2011, in connection with Plaintiff's prior application for benefits, at which Dr. Gish documented Plaintiff's stiff ankles, very limited range of ankle

motion, atrophy of the gastrocnemius muscles, inability to stand on heels or toes, slight difficulty with tandem walking, antalgic gait, and absent ankle jerks. (See Docket Entry 15 at 15 (citing Tr. 324-25).) However, Dr. Gish also observed that Plaintiff walked around the examination room (see Tr. 324), did not have a cane with him at the examination (see Tr. 325), walked to his car a quarter block away "at a fairly swift rate" (id.), had only a "slight antalgic gait" (Tr. 324 (emphasis added)), and would have difficulty only with ambulating "long distances" (Tr. 325 (emphasis added)).

The remaining evidence relied upon by Plaintiff consists of a statement from orthopedist Dr. James Lyle Comadoll (subsequently reiterated by Physician Assistant Douglas John Carroll ("PA Carroll") (see Tr. 346)) that Plaintiff's symptoms would worsen over time, and that he could not perform "any kind of regular standing up or be competitive for any occupation" (Tr. 356), as well as an opinion from Dr. Comadoll on a preprinted form providing that Plaintiff must elevate his legs at waist level or above frequently, that an assistive device qualified as "medically recommended," that Plaintiff's symptoms caused him to remain off-task greater than 15 percent of the workday, and that he could not perform any level of work on a sustained basis without the need for additional breaks. (Tr. 502.)

That evidence would not have compelled a favorable finding with respect to Listing 1.02A for two reasons. First, none of those statements specifically addressed Plaintiff's ability to <u>walk</u>. (<u>See</u> Tr. 346, 356, 502.) Second, the ALJ discounted the opinions from Dr. Comadoll and PA Carroll (<u>see</u> Tr. 20, 23), observing that the statement of Dr. Comadoll (as reiterated by PA Carroll) "d[id] not constitute a medical opinion but [wa]s rather a statement on an issue that is reserved to the Commissioner" (Tr. 20), and found Dr. Comadoll's "checklist form responses [not] very persuasive," noting that Dr. Comadoll "ha[d] not documented an examination of [Plaintiff] in the last several years," and that his opinions "were not supported by the great weight of the medical evidence" (Tr. 23). Significantly, Plaintiff did not challenge the ALJ's consideration and weighing of the opinions of Dr. Comadoll and PA Carroll. (<u>See</u> Docket Entry 15.)

Put simply, Plaintiff's first assignment of error does not warrant relief.

## 2. Function-by-Function Evaluation

Plaintiff next contends that "[t]he ALJ erred by failing to perform a function-by-function evaluation of Plaintiff's contested and relevant abilities to stand, walk and rely upon a cane." (<u>Id.</u> at 8 (bold font and single-spacing omitted).) Specifically, Plaintiff alleges that, "despite [Plaintiff]'s ability to stand and walk at one time as well as his need for a cane when ambulating and

17

balancing being both contested and relevant limitations, the ALJ never explain[ed] why he did not restrict [Plaintiff] to 15 yards of walking at once, 5 minutes of standing at once and use of a cane when ambulating and/or balancing in the RFC assessment." (Id. at 9 (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015)).) According to Plaintiff, the United States Court of Appeals for the Fourth Circuit recently "emphasized" that, "when a function is both contested and relevant, an ALJ must performed [sic] a detailed function by function analysis of those limitations." (Id. at 10 (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388–89 (4th Cir. 2021).) Plaintiff faults the ALJ for "simply summariz[ing] some of the medical evidence in the case and stat[ing] that a sedentary RFC would accommodate th[o]se issues." (Id. (internal parenthetical citations omitted).) The Court should also deny relief on this assignment of error.

RFC measures the most a claimant can do despite any physical and mental limitations. See Hines, 453 F.3d at 562; see also 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; see also 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20

C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted).

As to the role of the function-by-function analysis in the RFC determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 96-8p").

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, the Fourth Circuit stated "that a

19

per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (emphasis added) (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013))); see also Britt v. Saul, No. 19-2177, __ F. App'x __, __, 2021 WL 2181704, at *5 (4th Cir. May 28, 2021) ("Meaningful review is frustrated — and remand necessary — only where 'we are unable to fathom the [ ] rationale in relation to evidence in the record.'" (quoting Cichocki, 729 F.3d at 177)). Here, although the ALJ's decision did not include an express function-by-function discussion of Plaintiff's abilities to stand and walk (see Tr. 19-23), the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's lower extremity impairments (A) qualified as severe (see Tr. 17) but (B) neither caused limitations greater than the standing and walking requirements of sedentary work, nor necessitated a cane (see Tr. 18).

First, the ALJ's evaluation of Plaintiff's subjective symptom reporting supports the ALJ's finding that Plaintiff's lower

extremity impairments limited Plaintiff to a total of two hours of standing and walking in an eight-hour workday without the need of a cane.  The ALJ recognized Plaintiff's testimony that "his ankles ha[d] gotten worse since 2013," "he ha[d] used a 4-pronged cane for the last [seven] years," "he could walk 15 yards at most," and "he has poor balance" (Tr. 19) but, as discussed above, the ALJ thereafter found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms not entirely consistent with the medical evidence and other evidence in the record" (Tr. 19), a finding which Plaintiff has not contested (see Docket Entry 15).

The ALJ additionally made the following findings regarding the medical evidence of Plaintiff's lower extremity impairments and their impact on his ability to stand, walk, and balance:

- "[t]he medical records show after the last [ALJ] decision, [Plaintiff] continued to receive conservative medical treatment at Novant Health through primary care for . . . bilateral congenital clubbed feet" (Tr. 19), and Plaintiff "was taking Tramadol for pain during th[at] time" and "was not followed by pain management" (Tr. 20);

- "with respect to [Plaintiff]'s bilateral lower extremities, there does not appear to be any change or worsening in his condition since the prior [ALJ] decision" (id.);

- "[i]f [Plaintiff] were to follow treatment recommendations for orthotics, bracing, injections, and even potentially surgery, the[ treatment] records further suggest[ed] the potential for further functional improvement, if only at least to the extent that pain as opposed to structural

21

abnormalities has limited his functionality" (Tr. 21).

Those findings regarding the medical evidence, along with the ALJ's uncontested discounting of Plaintiff's subjective symptom reporting, more than adequately sustain the ALJ's RFC assessment.

The ALJ's evaluation of the opinion evidence also supports his RFC finding.  As discussed above, the ALJ discounted Dr. Comadoll's opinion deeming an assistive device for ambulation "medically recommended" (Tr. 502), because Dr. Comadoll "ha[d] not documented an examination of [Plaintiff] in the last several years" and his opinions "were not supported by the great weight of the medical evidence."  (Tr. 23.)  In addition, the ALJ found "somewhat persuasive" both the prior ALJ's decision and the reconsideration-level state agency medical consultant's opinion that Plaintiff remained capable of up to two hours each of standing or walking in an eight-hour workday without the need of a cane.  (Tr. 23; see also Tr. 76, 128-31, 145-46.)  Because the ALJ also found that "new evidence with respect to [Plaintiff's] bilateral wrists and possible carpal tunnel syndrome" necessitated "further limitations" (Tr. 23), the ALJ crafted the RFC to include maximum lifting and carrying of ten pounds and frequent handling and fingering with the bilateral upper extremities, but neither reduced the total amount of standing or walking, nor included the need for a hand-held assistive device (compare Tr. 18, with Tr. 76, 128-31, 145-46).

22

As the Court can "fathom the [ ] rationale," Britt, 2021 WL 2181704, at *5, undergirding the ALJ's RFC determination and, in particular, his limitation of Plaintiff to a total of two hours of standing and/or walking in an eight-hour workday without need of a cane, Plaintiff has not demonstrated grounds for relief in his second and final assignment of error.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 14) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 8, 2021

23